United States Court of Appeals for the Ninth Circuit. Now draw near, give your attention, you will be heard. I'd save the United States and this Honorable Court. Please be seated. Good morning and welcome to the Ninth Circuit. I'm Judge Nelson and it's a pleasure to be with you, Judge, with Judge Bybee and Judge Forrest. We have two arguments set for today. We'd ask you just watch your time, let us know how much time you want to reserve, and then, you know, sum up as your time's concluding. Let's go ahead and start. It looks like we're ready to go here. So we'll start with United States v. Primrose, case number 24-1462. May it please the Court, good morning. My name is George Boisseau. I represent Mr. Primrose. I must acknowledge the weight of authorities against my position. The closest case I have is United States v. Cox. It's different on the facts, it's different in law, but it stands for the same proposition that there comes a time where you can assume a name and it becomes your own. Here's my simple point, is that Mr. Primrose, in 1987, he changed his name. He didn't violate any law, he didn't change it to get away from felony convictions. He just assumed a different name. Counsel, I mean, I think that argument might make sense if it was just assuming a name, because people do change their names legally all the time, but that's not exactly all that your client did. They also assumed birthdays, and that was never going to be true, that they had a different birthday. So it was more assuming a whole identity and not just a new name. So how do you get around that fact? Well, I can't get around the fact that he used the name and the because the birth date can never be true. Well, now, my argument is that at a certain point in time, after 35 years, when you go, and let's talk about count one, this is August 28, 2018. He had been using the name Fort for 35 years, and he'd served 20 years, or 22 years in the Coast honorably. So when he went to make application for his wife for identification cards that received benefits, he wasn't using a false name. But he was listing a birth date? Yes. So he didn't use his own birth date with somebody else's name? Absolutely. He didn't use his own. I mean, I acknowledge he did not use his own birth date. He did not use his own name. He used the name and the date of birth that he assumed. Isn't the problem here that the name that he's assumed is the name of an actual person? I mean, this is not a name that he chose. It's not like John Wayne becoming John Wayne by taking on the name. John Wayne didn't assume the name of a dead child. Yes, that's true. That distinguishes the Cox case from this case. But my point is that after a point in time, even if, I mean, you're dealing, yes, you've assumed the name of a dead child, a child that survived tragically only three months. And I acknowledge that's a tragedy for the family. But the identity that he used, he developed himself for 35 years. He still had dual identities. He applied for a passport under his original name multiple times. I mean, there's so many holes. This is a really creative theory, but there's so many holes in it. I'm trying to figure out how this gets past anything. I mean, you've got the date of birth problem, and then you've got this other problem, which is he went and applied for passports in his original name. He had two passports. Well, yes, but the first passport had expired. He didn't, you know, at a certain point in time. He renewed it. He renewed the Primrose passport in 1999, 12 years after he supposedly assumed this new name. And his identity that he used in the Coast Guard, the identity he used for the fact that... Counsel, your whole argument is premised on he believed he was this other person, and that's not true. It's just not true at all. It's not like he was passing himself off under a different name to join the country club. These are official documents, and you've got things that actually match up with real people. So he has assumed the identity of a real person. It's not a name that he just decided to call himself. That's true. I mean, he admitted all that. He admitted that, but he also admitted that he'd been used for 35 years before this offense. He'd been using the name Fort, and he wasn't using... Both names. Can you address that issue? He'd been using both names. So it's not as if he just believed for 35 years he was this other man. He knew it was fraudulent, and he kept both identities live. With his family, he didn't tell them he was a new person. So he had dual identities. Well, yes, he did not tell his family. That's in the record. But he wasn't using the name Primrose, but his service was... Then why did he get the new passport under Primrose in 1999, 12 years later? Well, because he was traveling in the Coast Guard. He was using that... No, 1999, he was still using the Fort identity. Exactly, and he applied for a passport to renew his Primrose passport. But he didn't use that passport. He didn't travel under that passport. He didn't go into the Coast Guard under that name. He didn't apply for credit. He didn't pay taxes under that name. He didn't pay Social Security. All the things that he did were under his assumed name of Mr. Fort. So even if we accepted the idea that you're trying to advance here, that at some point you can take over another person's identity and it just becomes yours, like at what point is that, right? Because the issue that we're talking about here is whether he had the sufficient mens rea for this crime, which is to know his conduct was unlawful. So at what point in time does he switch from knowing it's unlawful to thinking it's actually lawful because of the passage of time? Because adverse possession, which is the analogy you're trying to draw, is an established principle that is temporally defined, right? It's 10 years or some other period of time that's specified in the law. So what's the moment here when we cross the line? And isn't that fatal to your claim? Because here we're talking about his mental state of does he know this is lawful or unlawful? And if you can't define a time period that switches from one status to the next, then how can we establish that his mental state was now he actually knows under the law that this is proper? Well, the two time frames that I'm using is 27 years he was named for the count three and 35 years for the counts one and two. So my contention is that at that point in time, when you're dealing with a person who's used this identity and done everything I'm talking about, I mean, enrolling, being in the military, honorably serving his country, paying taxes, not developing any criminal history, developing a life under that name, at least at 35 years, that meets... So you don't know, but it's pretty long here, so it must be good enough. Yes, that would be my... I don't believe that I can say that, well, after five years, that's enough, or 10 years for adverse possession. But 35 years in this case, I submit that's enough. The other part of the analogy that you've drawn with adverse possession that doesn't quite make sense to me is in that doctrine, you have to be open and obvious, right? So if we're talking about real property, like the whole world has to know that the property that you're using actually doesn't belong to you. And nonetheless, you're using it for the whole world to see, nobody does anything about it. So at some point in time, we just say, okay, the property is now yours. Here, he didn't do this in an open and obvious way. I know you want to say, well, he's out in the world under the name of Fort, with everybody knowing that he actually was Primrose, but he decided to use Fort's identity. All of that was a secret, otherwise this would not have worked. Well, to his family, I admit that he didn't... To his family, he was... The government didn't know that he was Primrose who became Fort. They wouldn't have let him serve under the name of Fort if they had known that. Well, that's true, but he did... So it's not open and obvious. When you have to go through a security clearance, you have to indicate... I mean, this didn't come into the record, but you have to indicate any prior names you were known by. He had to have lied on that form. I'm not disputing the fact that that might have been one of the questions he asked, but yes, he used the name Fort to enroll in the military. He served, he paid, he got a security card under Fort. So to answer Judge Forrest's question, is that yes, to the world, he was Mr. Fort, except for his family. But to the outside world, to the military, to the people that he dealt with on a daily basis, to the taxing authorities, to everyone that mattered in terms of officialdom, he was Mr. Fort, and he assumed that name, that identity, and lived that for 35 years until he was arrested. So it is... I know this is an unusual case, and I don't have a lot of case... I have no case law to support me, and I acknowledge the authorities against me, but there comes a time, in my argument, that you... There comes a time when you've used the name for this period of time, and you've not committed any crimes. You're not trying to avoid a felony conviction. You're not trying to hide something, except then you get to use that name. And then you go to court and ask them to change your name. And if he had done that, we wouldn't be here today. Exactly. But he didn't do that. And he didn't do that, but now this is the court that can look at this case and say, fundamentally, this is unfair to saddle him with these felony convictions, because he had lived his life, at least the 35... most of his adult life, under the name Fort. And at a point in time, 35 years or 27 years, that's long enough to possess that identity. Counsel, I understand your argument to be focused on the matter of falsity. Are you advancing any sort of position on materiality or just falsity? Just falsity. Thank you. I mean, I don't dispute the fact that it's material. Counsel, one and two and three, I mean, I'm arguing falsity in a specific intent to use a false statement. I am asserting that when he used that name, it wasn't false. It wasn't willfully false. I have three minutes for rebuttal. Yeah, we'll give it to you. If I could say that, thank you. Yeah. And, counsel, thank you for your candor. Appreciate it. May it please the court. Good morning. Tom Mielek for the United States. Your Honor, our position, the United States position, is simply that there is sufficient evidence for reasonable jury to find the defendant Primrose guilty of all three, excuse me, one, two, three, and five, four counts in this case. We believe that the court, in reviewing the sufficiency of the evidence, must, I understand, review it in the light most favorable to the prosecution, respecting the jury's province to determine credibility of witnesses, to determine, resolve the conflicting evidence, and to draw reasonable inferences. There were many reasonable inferences here. So, first of all, I think you're right on all those points in spades. But why did the government, what was the big deal here? I mean, it is, I understand if someone uses a false name in order to, you know, deceive the government in some way. And I'm trying to figure out what the touch point here was. Is there just an institutional interest that we can't have people who we don't know, you know, did it have to do with this top secret clearance? What was driving this? There was all of that, Your Honor. He had a security clearance. He maintained a security clearance with his civilian job that was doing work through the civilian contract with the Coast Guard for the Pacific Missile Range. When did he get a security clearance? He had a clearance with them. He had... When did he first get his security clearance? He had security clearances as a new enlisted man in the Coast Guard, Your Honor, when he served... In 1994? Not when he first went in, Your Honor. I believe he obtained them, several of them, they were renewed from the service 1994 to 2016 when he retired. And then he had a clearance in his civilian job with PAE when they were doing the work at the... I assume in order to get a security clearance, he had to fill out... Is that the SF-86? That's a pretty standard form. He did. Okay. And how did that get... How did that slip through the network? It fell through the crack, Your Honor. I'm not sure. It fell through when he enlisted in the Coast Guard. He enlisted in the Coast Guard with a false name. Right. But the Coast Guard was going to conduct a background check prior to issuing him a security clearance. So he filled out an SF-86. He did. And somehow the Coast Guard or whoever investigated this probably didn't... It sounds like they didn't do a very thorough job. I can't argue with that. I don't have an answer how that fell through the crack. What was the age difference between the original date of birth and... 12 years. The age difference between his real... It was 12 years early. So the child, Fort... Bobby Edward Fort was born in 1967 and died in 1967. Mr. Fort was born... He's five years younger than I am. He was born in 1955. Um, that allowed him to get into the Coast Guard. You're not... The charges here are not based on lying on your SF-86. No. The charges here are receiving benefits. Is that what it... Well, the charges are based on his ability to get a passport under false information, his use of a passport to get a driver's license, his use of the... His use of the false identity to get military benefits for his wife, the dependent ID card, and then the fraud that went from 1987, even though... Even though he did have... After he got the false driver's license, the false birth certificate under Bobby Edward Fort, and then the Texas driver's license, and then got a social security number for Bobby Edward Fort, when he already had a social security number on his own name, his true name, that was how the fraud program manager at the Passport Center determined there was something fishy. They found... They did a post-issuance audit. They looked at the application he had there was a social security number issued much later, found that to be funny, then went on... He went on Ancestry, actually, official databases and a commercial database, and found the death certificate for Bobby Edward Fort. I was like, that passport guy needs to be hired in our top secret security clearance program. I'm sorry, Your Honor? That passport guy needs to be hired in our top secret security clearance program. He's the best one I've ever seen. His testimony, Mr. Gabarino, he was really sharp. And then they, of course, went to the associated passport application for the wife, Morrison. Is he going to lose his military benefits? Sir? Is he losing his military benefits? My understanding is the Coast Guard has determined it was a fraudulent enlistment. They did not claw back all his pay that he received on active duty, but it's a fraudulent enlistment is what I understand, Your Honor. I mean, he rendered 22 years of distinguished service to the United States. Yeah, I'm sorry that it was done under a false name, but... He was honorably discharged, Your Honor. The fact of the matter is that the service has already been rendered to the United States. That's a pretty cruel result. I cannot argue with the merits of that, Your Honor. That was not a decision made by the Department of Justice. And that's not in the record. That's just what I understand, that the Coast Guard has determined it was a fraudulent enlistment. And do they determine that because he wasn't eligible at the time he enlisted because of the age? I'm sorry, Your Honor. Do they determine that because he was not eligible for service when he enlisted because of his age? Because of the false information he gave, and I think because of his age and the date of birth and the documents that he submitted. I don't have a lot of information on that, Your Honor. If I understand it correctly, if he'd used his original date of birth, he would not have qualified for the original position. That's correct, Your Honor. That's my understanding. So there actually is some, I mean, I don't know what you call it. He got a benefit that he otherwise couldn't have gotten by using the false identity. And really, the false birth date. Yes. Yes, Your Honor. Our position is there were a lot of situations here in evidence that was presented. In 1987, he first replied for a passport under his real name. That was issued. They found that. The sister, Carol Primrose Burton, identified that photograph and the passport for Walter Lynn Primrose as to be her brother. The, she testified that when she moved to Lufkin, Texas with her father, they lived at the Finley Road address. That is in the passport, his original passport, which is our supplemental excerpt of record. Exhibit 12 on our fourth volume of supplemental excerpt of record. Exhibit 735. Carol Burton. Then subsequent to that, as the court mentioned, after he went into the Coast Guard, he applied for his first passport under the phony name Bobby Edward Fort at Pasquotank County, North Carolina on November 8th of 1996. And then just after that, less than three years after that, he applied for a renewal of his true name passport. He used it at Chesapeake, Volvo Parkway, Chesapeake, Virginia on March 30th of 1999. That information all came out before the jury. It also came out that he received mail at what we call a mail drop in Kailua on the windward side of the island, 31 miles away from where they lived in Kapolei, their residence. That was opened up by his wife in 2000, and Carol Primrose Burton wrote him a letter there. She testified about that as Exhibit 105 on our second volume of supplemental excerpts on page 426. It was a letter she wrote to her brother that she only knew by Walter Lynn Primrose. She didn't know Bobby Edward Fort. She didn't know Julie Lynn Montague, the sister-in-law. She wrote to them on August 2nd of 2021. That letter was found in the residence during the search warrant. There was also a letter from Cecil Primrose, the father, that was written to Walter and Glenn. I guess it was actually written to Mr. and Mrs. W. and G. Primrose. That was written in… Counsel, I think we got the facts here. There was one issue. There was some confusion on specific intent in our case law. I wonder if you can address that at all. There's the Titoian case and the Bryan case. Well, not so much on the law. I think what the intent here was to give a false statement as to the 1001. He has to not only understand that he's making a false statement, but understand that his conduct is illegal. This whole thing was kept secret. The change from their real name to the stolen… Your point is, even if we said you had to show that he knew that it was illegal, that there's enough evidence to support that here? Absolutely. They kept it quiet. Bryan McClain, their high school classmate, testified that they were supposed to keep that quiet. The sister didn't know. Carol Burton didn't know his real name or Morrison's phony name, the Montague name. It was something that they wanted to hide. They had to hide. When he went to get a passport under the first name of Bobby Everett Ford, he checked the box that he never had another passport. Well, he did have another passport under his real name that he got in 1987. That's evidence. Oh, no, that is actually evidence that you're charging him with. You're actually charging him with that because you're saying he obtained a passport and driver's licenses with false information. With false information. That conspiracy, which is the count five, Your Honor. Unless the court has questions for me. I don't. I think we've got it from you. Thank you. Thank you. I will answer some questions the court has. And yes, he had top secret clearance. He had security clearance, but that was based on the identity that he had. What is his service to the country for 22 years of service? The fact that he had served in the Coast Guard with distinction, he honorably discharged all those facts that went into his security clearance and his top secret clearance. In a weird way, the security clearance, I don't think is one of the charging offenses, right? I mean, it's really just the driver's license and the passport or is the security clearance, was that also part of the charging offense that he obtained? No, it was not part of the charge. I mean, it's evidence, obviously. It was evidence, and I would like to turn it to the point where that actually shows why this is a cruel result. Yes, he's lost his benefits as we've talked about, but in a sense that- Why did he lose his benefits? He lost his benefits because he was convicted of a felony or he lost his benefits because he committed fraud in the application for the job? Or do you know? I don't know. I don't know to represent the specific reasons why, but I know that he has. And his life is turned upside down because of this. There's no doubt. Yes, some of this was his own making, but in the end, he didn't do anything to get on the government's radar other than he didn't violate any laws. He didn't have criminal offenses. He wasn't abusing his position. He did everything he could to serve this country. And we look at the, yes, there's no evidence that he wouldn't have got the Coast Guard position because of his age. There was- What is that? Because I thought there was an age limitation at which they wouldn't have brought you in and that 12 years was material to that. I know there was a difference, although I don't remember, and I wasn't a trial attorney, but I don't remember a specific testimony regarding- When did he first go into the Coast Guard? That would have been 1994. 1994, I think. So, 94, he would have been- Well, Fort would have been 32. Primrose would have been 44. So, I think that's the discrepancy. If I remember right, they wouldn't have hired you in the first instance above Fort. I know there was a discrepancy. I don't remember there was testimony, actually, that he wouldn't have been eligible to go into the Coast Guard. He seemed to know that, too. I thought there was evidence that he knew that, that he wouldn't be eligible if he used his old birth date. I don't remember that specific testimony. But irrespective of the fact, it would have made a difference had somehow he declared that he was injured or there were some reasons why he couldn't do his service and he was getting benefits because of disability and really he was older and shouldn't have ever got in. But he served 22 years. It's sort of an unjust enrichment claim that you're bringing that, look, he did it and he's entitled to the benefits from doing that. Yes, I think the court is saying it better than I have said it. That only goes so far, though, because they didn't claw back the money that was paid to him. He did get benefits for that. It's just that they said, look, if you commit a felony, you can't get your future benefits. I don't know. I don't know what that theory is. We can decide that in another case if you bring it. And perhaps if I would have had different arguments, and obviously I had to argue these specific intent argument because he made a Rule 29 motion. He represented himself during trial. So I was limited in terms of what arguments. There would have been an argument perhaps. Well, he actually didn't represent himself. Fort was representing Primrose. Well, yes. Yes, that's true. But he did go in pro per and he didn't have the benefits of an attorney. And some of the arguments maybe could have been made a little bit differently in order to preserve some issues. But we are with this record. And these are the arguments I'm making. And yes, I am arguing fundamental fairness, if nothing else. OK, thank you. Thank you. I thank you to both counsel for your arguments in the case. The case is now submitted.
judges: BYBEE, NELSON, FORREST